Andrew Altschul, OSB No. 980302
E-mail: andrew@baaslaw.com
Angela Ferrer, OSB No. 140814
E-mail: angela@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP
321 SW Fourth Avenue, Suite 600
Portland, OR 97204
Telephone:  503.974.5015
Facsimile:  971.230.0337

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LEONARD WILLIAMSON**, | Civil No. 6:16-cv-00783 |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| | (42 U.S.C. §1983 – Violation of First |
| **OREGON DEPARTMENT OF CORRECTIONS,** an Oregon State Agency, and **COLETTE PETERS,** an individual, in her personal capacity, | Amendment and Due Process Rights; Whistleblowing Retaliation in violation of ORS 659A.203, 659A.230 and 659A.199; Wrongful Discharge) |
| Defendants. | DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1.      This is an action for declaratory, injunctive and monetary relief, including

attorneys' fees and costs, to redress unlawful actions and employment practices to which

Defendants subjected Plaintiff, in violation of Plaintiff's constitutional, statutory, and common

law and contractual rights.

## JURISDICTION

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question

jurisdiction, 28 U.S.C. §1343, 28 U.S.C. §2201, and 42 U.S.C. §1983.  This Court has

supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3.     Venue is proper in the District of Oregon pursuant to 28 U.S.C. §1391(b) because

the claims arose in this judicial district.

## PARTIES

4.     Plaintiff Leonard Williamson ("Plaintiff") is a resident of Salem, Oregon.  During

the relevant period, Plaintiff was an employee of Defendant Oregon Department of Corrections

("DOC"), serving as Inspector General and working in Salem, Oregon.

5.     Defendant DOC is an Oregon state agency.  DOC officials acting in their official

capacity were, at all relevant times, acting under color of state law.

6.     Defendant Colette Peters ("Defendant Peters") is, on information and belief, a

resident of Sherwood, Washington County, Oregon.  Defendant Peters was appointed Director of

DOC in February 2012, and held that position during the relevant period.  Plaintiff brings this

suit against Defendant Peters in her personal capacity.

## GENERAL ALLEGATIONS

7.     Plaintiff held the position of Inspector General for DOC from September 2011

until his termination on October 23, 2015.  Before becoming DOC Inspector General, Plaintiff

worked as Attorney-in-Charge of the Torts and Employment Section in Trial Division of the

Oregon Department of Justice.

8.     Defendant Peters was appointed DOC Director in February 2012.  She previously

held the positions of Inspector General and Assistant Director for Public Service.

9.      Defendant Peters has terminated several employees during her tenure for questionable reasons.  In 2007, for example, while Defendant Peters was working as DOC's Inspector General, she created a new lead worker role for her friend Daryl Borello, and then had Borello take the lead in investigating a long-term employee, Teri Gill, for alleged wrongdoing that occurred years before Peters and Borello assumed their managerial roles over Gill.  Peters and Borello also attempted to justify Gill's termination based on her alleged dishonesty.  An arbitrator later reversed Gill's termination, expressly finding that he "does NOT question [Gill's] credibility" but instead, the arbitrator noted in his ruling that he "discounted Peters' testimony on credibility grounds."

10.     Defendant Peters has also demonstrated a pattern of intentionally creating job vacancies by terminating employees or causing them to quit in order to create opportunities for her to appoint her personal friends, even if not the most qualified, to the positions.  In 2013 Defendant Peters terminated the Director of Oregon's Correction Enterprises and replaced him with her longtime friend Ken Jeske, who dubbed himself as Defendant Peters' "handbag," against the advice of the Policy Group and the Deputy Director at the time.  In 2014, Defendant Peters ordered the termination of the DOC Assistant Director of Government Efficiencies and Communications, and then hired a personal friend, Heidi Stewart, for the position.  Also in 2014, the DOC Assistant Director of General Services took early retirement due to the treatment she received from Defendant Peters.  Defendant Peters appointed her friend Borello to fill the position, despite Borello's relatively low qualifications and low ranking among the many applicants and against the advice of the recruitment team.

11.     Plaintiff received consistently positive performance reviews and feedback during his first three years as Inspector General.

12.     In November 2013 and 2014, Plaintiff was awarded paid leave in recognition of his "exceptional performance."

13.     Starting in or about May 2015, Defendant Peters began taking overt steps to undermine Plaintiff's reputation within DOC for the purpose of creating an opportunity to appoint one of her friends to replace him.  Defendant Peters told her friend Jeske that she planned to appoint him as Inspector General.

14.     Around the same time, Defendant Peters told an executive coach who had been hired from outside of the DOC that Plaintiff had "credibility issues with his staff."  The executive coach expressed surprise and strong disagreement with Peters' statement.

15.     In May 2015, Peters ordered an investigation into two stale allegations regarding Williamson:  a previously resolved complaint raised two years prior in 2013 by another DOC employee, and Plaintiff's September 2014 statement regarding the DOC's K-9 handler unit, where Plaintiff relayed information provided by then-Deputy Inspector General Garrett Laney which, unbeknownst to Plaintiff at the time, was untrue.

16.     As Defendant Peters knew, the 2013 complaint already had been resolved.  The complainant had acknowledged that her concerns stemmed from a misunderstanding between herself and Plaintiff, and Plaintiff had received no disciplinary action in connection with the incident.

17.     Both DOC Deputy Director Kim Brockamp and Oregon State Police Superintendent Rich Evans had advised Defendant Peters that further investigation into Plaintiff's 2014 statement regarding the K-9 handler unit was not warranted.  Nevertheless, Defendant Peters persisted in her efforts to find a way to oust Plaintiff.

18.     Defendant DOC's investigation, ordered by Defendant Peters, began on June 12, 2015.

Page 4 - COMPLAINT

19.      Martin Imhoff, a low-ranking DOC Human Resources employee, conducted the investigation.

20.      DOC assigned Imhoff to lead the investigation despite multiple conflicts of interest; Imhoff was seeking a promotion to a position for which Laney—the source of the false information that Plaintiff had repeated regarding the K-9 handler unit—was on the hiring committee.  Laney was also Imhoff's mentor at DOC and was close friends with Imhoff's direct supervisor, Assistant Director of Human Services Chris Popoff.

21.      Almost immediately, Plaintiff became concerned about the fairness of the investigation, and he shared those concerns with the DOC Deputy Director and other DOC employees during the following weeks and months.

22.      On July 31, 2015, Plaintiff made a public records request for emails of Defendant Peters and several other DOC employees, believing that the records would assist him in revealing the baselessness of the investigation against him.  After being advised that the cost of his request was extremely high, Plaintiff made a second narrower request on August 24, 2015.  DOC never responded to the second request.

23.      On or about August 17, 2015, Laney told Plaintiff that Jeske had boasted that Defendant Peters had planned to replace Plaintiff and appoint Jeske as Inspector General, but that Jeske had turned down the position because it would have entailed a pay cut.

24.      Plaintiff shared this information with the DOC Deputy Director, who expressed that Defendant Peters was "very angry" about the public records request that Plaintiff had made on July 31, 2015.

25.      Based on his concerns about the fairness of the ongoing investigation and suspecting that the investigation was simply a ruse to create an opportunity for Defendant Peters

to replace Plaintiff with one of her friends, Plaintiff filed a tort claim notice on September 3,

2015 indicating his intent to sue Defendant DOC and Defendant Peters.

26.     Also on September 3, 2015, Plaintiff filed an ethics complaint with the Oregon

Government Ethics Commission.  His ethics complaint detailed his concerns that, since her

appointment as DOC Director, Defendant Peters had engaged in a pattern and practice of

removing employees from their positions and appointing her friends who were not the most

qualified candidates.

27.     Also on September 3, 2015, Plaintiff and his then-attorney met with Deputy

Attorney General Fred Boss regarding Plaintiff's concerns that the investigation was a sham.

Plaintiff also advised Boss about his concerns regarding the investigator's conflicts of interest,

and called attention to Defendant Peters' pattern and practice of removing DOC employees,

either by terminating them or making their working conditions intolerable, and then appointing

her friends, at times not qualified, to the vacant positions.

28.     Plaintiff requested that Deputy Attorney General Boss conduct an independent

investigation into the allegations against Plaintiff, the conflict of interest in the investigation,

Defendant Peters' statement to Jeske about appointing him Inspector General, and other conduct

by Peters that raised ethics concerns.

29.     Upon information and belief, Boss did not attempt any investigation, and instead

shared Plaintiff's complaint with Defendant Peters.

30.     Less than three weeks later, DOC Spokesperson Liz Craig, acting at the direction

of Defendant Peters, revealed to the press that Plaintiff was under investigation by the DOC's

human resources department.  At no point did Defendant Peters or Defendant DOC offer

Plaintiff a name-clearing hearing regarding the human resources investigation.

31.     On or about October 19, 2015, Imhoff completed his investigation report, which

contained no findings of wrongdoing by Plaintiff or recommendations for discipline against him.

32.     That same day, Defendant Peters sent Plaintiff a termination letter in which she

offered to let Plaintiff work for three more months on a "project assignment" if, among other

things, he agreed to withdraw the tort claim notice and "release…all claims."

33.     Defendant Peters offered no explanation as to the reason for Plaintiff's

termination, other than she was making a "change in leadership."

34.     Plaintiff refused to release his claims.

35.     On October 23, 2015, Defendants terminated Plaintiff's employment.

36.     On or about October 27, 2015, Defendant DOC released to *The Oregonian* all

documents and email exchanges related to the human resources investigation without any notice

to Plaintiff or opportunity to clear his name before his reputation was publicly damaged.  In a

statement to *The Oregonian*, DOC Spokesperson Craig said that "[t]he human resources

investigation recently completed factored in" to the decision to terminate Plaintiff, "but was not

the only factor."

37.     Plaintiff was never told the reason for his termination.

38.     On account of the unlawful actions of defendants, Plaintiff has suffered economic

damages as well as embarrassment, anxiety, humiliation, anger, emotional distress,

inconvenience, and damage to his personal reputation.

### FIRST CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983—Deprivation of First Amendment Rights
### Against Defendant Peters in her Personal Capacity

39.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1

through 38.

40.      At all materials times, Defendant Peters was acting within the course and scope of her role as Director of DOC and under color of state law.

41.      Plaintiff exercised his First Amendment right to free speech when he issued a tort claim notice, filed an ethics complaint regarding Defendant Peters' conduct, and reported Defendant Peters' conduct to the Deputy Attorney General.

42.      In exercising his right to free speech, Plaintiff spoke as a citizen and not as part of his official duties.

43.      Plaintiff's speech was on a matter of public concern.

44.      Defendant Peters took an adverse action against Plaintiff when she terminated or caused Defendant DOC to terminate his employment.

45.      Plaintiff's speech was a substantial or motivating factor for his termination.

46.      Plaintiff is entitled to a declaration that Defendant Peters violated Plaintiff's First Amendment right by terminating or causing Defendant DOC to terminate his employment in retaliation for his protected speech.

47.      As a direct and proximate result of defendant Peters' unconstitutional conduct, Plaintiff has suffered economic damages in the form of lost income and benefits, in an amount to be determined at trial.

48.      As a direct and proximate result of defendant Peters' unconstitutional conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and damage to his professional reputation and is entitled to an award of compensatory damages in the amount of not less than $750,000.

49.      Plaintiff is entitled to receive punitive damages because Defendant Peters acted with evil motive or intent or with reckless or callous indifference to Plaintiff's federally protected rights.

50.      Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorneys' fees, expert fees, and costs incurred herein.

### SECOND CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983—Deprivation of Fourteenth Amendment Right to Due Process
### Against Defendant Peters in her Personal Capacity

51.      Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 50.

52.      At all materials times, Defendant Peters was acting within the course and scope of her role as Director of DOC and under color of state law.

53.      Plaintiff has a liberty interest protected by the due process clause of the Fourteenth Amendment of the United States to be free from false charges made under color of state law which involve or imply malfeasance in office, or which adversely reflect upon or damage Plaintiff's standing and ability to obtain gainful employment in his field, or damage his career and his future in his profession.

54.      In or about September 2015, Defendant Peters, acting on her own and through her subordinates, caused information to be disseminated to members of the press and public at large indicating that Plaintiff was under investigation and would soon be terminated, falsely implying that Plaintiff had committed malfeasance in office.  Defendant Peters refused to offer Plaintiff adequate due process to clear his name.

55.      In or about October 2015, Defendant Peters, acting on her own and through her subordinates, caused information to be disseminated to members of the press and public at large falsely suggesting that Plaintiff had been terminated as a result of the investigation and falsely implying that Plaintiff had committed malfeasance in office.  Defendant Peters refused to offer Plaintiff adequate due process to clear his name.

56.     Defendant Peters' conduct adversely reflected on and damaged Plaintiff's reputation and standing.

57.     Defendant Peters' conduct rendered Plaintiff unable to continue to work in his chosen occupation.

58.     Plaintiff is entitled to a declaration that Defendant Peters violated Plaintiff's constitutional liberty right to due process.

59.     As a direct and proximate result of Defendant Peters' unconstitutional conduct, Plaintiff has suffered economic damages in the form of lost income and benefits, in an amount to be determined at trial.

60.     As a direct and proximate result of Defendant Peters' unconstitutional conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and damage to his professional reputation and is entitled to an award of compensatory damages in the amount of $750,000.

61.     Plaintiff is entitled to receive punitive damages because Defendant Peters acted with evil motive or intent or with reckless or callous indifference to Plaintiff's federally protected rights.

62.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorneys' fees, expert fees, and costs incurred herein.

### THIRD CLAIM FOR RELIEF
### Violation of ORS 659A.203—Retaliation Against a Public Employee for Whistleblowing Against Defendant DOC

63.     Plaintiff realleges and incorporates paragraphs 1 through 62 above.

64.     Defendant DOC is a public employer.

65.     By issuing a tort claim notice, filing an ethics complaint, and reporting Defendant Peters' conduct to the Deputy Attorney General, Plaintiff reported and disclosed information that

he reasonably believed was evidence that defendants violated state and/or federal laws, rules, or regulations, including but not limited to the Oregon Government Ethics Law, ORS Chapter 244, and/or that defendants engaged in mismanagement or abuse of authority.

66.     Plaintiff suffered an adverse employment action when Defendant DOC terminated his employment.

67.     Defendant DOC's termination of Plaintiff's employment was because of Plaintiff's protected activity.  Defendant DOC's termination of Plaintiff's employment is the type of conduct that reasonably would be expected to discourage or dissuade a public employee from challenging violations of law.

68.     Plaintiff is entitled to a declaration that Defendant DOC violated his statutory right to report conduct he reasonably believed violated state and/or federal laws, rules, or regulations and/or constituted mismanagement or abuse of authority.

69.     Plaintiff is entitled to any injunctive and equitable relief that may be appropriate, including but not limited to reinstatement.

70.     As a direct and proximate result of Defendant DOC's actions as alleged herein, Plaintiff has suffered economic losses in the form of back pay, front pay, lost benefits, and out-of-pocket expenses, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

71.     As a direct and proximate result of Defendant DOC's actions as alleged herein, Plaintiff has suffered noneconomic harm in the form of emotional and mental distress, degradation, embarrassment and humiliation, for which Plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

72.     Plaintiff has hired legal counsel to prosecute his claims and is entitled to his reasonable attorneys' fees, expert fees, and costs incurred herein pursuant to ORS 659A.885 and

Page 11 - COMPLAINT

ORS 20.107.

**FOURTH CLAIM FOR RELIEF**
**Violation of ORS 659A.230—Discrimination for Initiating Civil Proceedings**
**Against Defendant DOC**

73.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 72 above.

74.     Plaintiff, in good faith, initiated a civil proceeding against defendants on September 3, 2015 when he filed an official tort claims notice and a complaint with the Oregon Government Ethics Commission outlining his complaints.

75.     Plaintiff suffered an adverse employment action when Defendant DOC terminated his employment.

76.     Defendant DOC's termination of Plaintiff's employment was because of Plaintiff's protected activity.

77.     Plaintiff is entitled to a declaration that Defendant DOC violated his statutory right to initiate civil proceedings.

78.     Plaintiff is entitled to all appropriate injunctive and equitable relief.

79.     As a direct and proximate result of Defendant DOC's actions as alleged herein, Plaintiff has suffered economic losses, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

80.     As a direct and proximate result of Defendant DOC's actions as alleged herein, Plaintiff has suffered noneconomic harm in the form of emotional and mental distress, degradation, embarrassment and humiliation, for which Plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

81.     Plaintiff has hired legal counsel to prosecute his claims and is entitled to his reasonable attorneys' fees, expert fees and costs incurred herein pursuant to ORS 659A.885 and

ORS 20.107.

### FIFTH CLAIM FOR RELIEF
### Violation of ORS 659A.199—Retaliation for Whistleblowing
### Against Defendant DOC

82.     Plaintiff realleges and incorporates paragraphs 1 through 81 above.

83.     By issuing a tort claim notice, filing an ethics complaint, and reporting defendant

Peters' conduct to the Deputy Attorney General, Plaintiff reported and disclosed information that

he believed was evidence that defendants violated one or more state and/or federal laws, rules, or

regulations, including but not limited to the Oregon Government Ethics Law, ORS Chapter 244.

84.     Plaintiff acted in good faith in reporting the violations.

85.     Plaintiff suffered an adverse employment action when Defendant DOC terminated

his employment.

86.     Defendant DOC's termination of Plaintiff's employment was because of

Plaintiff's reports or disclosures.

87.     Plaintiff is entitled to a declaration that Defendant DOC violated his statutory

right to report conduct he reasonably believed violated state and/or federal laws, rules, or

regulations.

88.     Plaintiff is entitled to any injunctive and equitable relief that may be appropriate,

including but not limited to reinstatement.

89.     As a direct and proximate result of Defendant DOC's actions as alleged herein,

Plaintiff has suffered economic losses in the form of back pay, front pay, lost benefits, and out-

of-pocket expenses, in an amount to be determined at trial, plus interest thereon at the statutory

rate of 9% per annum.

90.     As a direct and proximate result of Defendant DOC's actions as alleged herein,

Plaintiff has suffered noneconomic harm in the form of emotional and mental distress,

degradation, embarrassment and humiliation, for which Plaintiff seeks compensation in an

amount to be determined at trial, but not less than $750,000.

91.     Plaintiff has hired legal counsel to prosecute his claims and is entitled to his

reasonable attorneys' fees, expert fees, and costs incurred herein pursuant to ORS 659A.885 and

ORS 20.107.

**SIXTH CLAIM FOR RELIEF**
**Wrongful Discharge**
**Against Defendant DOC**

92.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 91

above.

93.     Defendant DOC engaged in actions, including terminating Plaintiff's

employment, designed to discourage Plaintiff's protected activity and motivated in substantial

part by Plaintiff's decision to engage in protected activity as described above and by Defendant

Peters' desire to replace Plaintiff with one of her personal friends.  Terminating Plaintiff for any

or all of these reasons was wrongful and in violation of public policy.

94.     As a direct and proximate result of Defendant DOC's actions alleged herein,

Plaintiff has suffered economic losses in the form of back pay, front pay, lost benefits, and out-

of-pocket expenses, in an amount to be proven at trial, plus interest.

95.     As a direct and proximate result of Defendant DOC's actions alleged herein,

Plaintiff has suffered noneconomic harm in the form of emotional and mental distress,

degradation, embarrassment and humiliation, for which Plaintiff seeks compensation in an

amount to be determined at trial, but not less than $750,000.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     On Plaintiff's First Claim for Relief, against Defendant Peters:

    a.  A declaration that Defendant Peters violated Plaintiff's First Amendment

right to free speech;

    b.   An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, in an amount to be determined at trial;

    c.   An award of noneconomic damages in the amount of $750,000;

    d.   Punitive damages; and

    e.   Plaintiff's attorney's fees, expert fees, and costs incurred herein.

2.      On Plaintiff's Second Claim for Relief:

    a.   A declaration that Defendant Peters violated Plaintiff's constitutional liberty interest in due process;

    b.   An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, in an amount to be determined at trial;

    c.   An award of noneconomic damages in the amount of $750,000;

    d.   Punitive damages; and

    e.   Plaintiff's attorney's fees, expert fees, and costs incurred herein.

3.      On Plaintiff's Third, Fourth, and Fifth Claims for Relief:

    a.   A declaration that Defendant DOC violated Plaintiff's statutory rights;

    b.   All appropriate injunctive and equitable relief, including but not limited to reinstatement;

    c.   An award of economic damages for backpay, front pay, lost benefits, and out-of-pocket expenses, in an amount to be determined at trial;

    d.   An award of noneconomic damages in an amount to be determined at trial, but not less than $750,000;

    e.   An award of prejudgment interest at the statutory rate of 9% per annum; and

    f.   Plaintiff's attorneys' fees, expert fees and costs incurred herein.

4.     On Plaintiff's Sixth Claim for Relief:

  a.  A declaration that Defendant DOC violated Oregon law by terminating

      Plaintiff's employment in violation of public policy;

  b.  All appropriate injunctive and equitable relief, including but not limited to

      reinstatement;

  c.  An award of economic damages for backpay, front pay, lost benefits, and

      out-of-pocket expenses, in an amount to be determined at trial; and

  d.  An award of noneconomic damages in an amount to be determined at trial,

      but not less than $750,000.

5.     Plaintiff demands a jury trial.


DATED this 5th day of May, 2016.

                                BUCHANAN ANGELI ALTSCHUL
                                & SULLIVAN LLP

                                 s/ Andrew Altschul
                                Andrew Altschul, OSB No. 980302
                                E-mail: andrew@baaslaw.com
                                Angela M. Ferrer, OSB No. 140814
                                E-mail: angela@baaslaw.com
                                Telephone: (503) 974-5028
                                Attorneys for Plaintiff


Page 16 - COMPLAINT